IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAY JONES BAIRD, JU-5771,
    Petitioner,

v.      2:16-cv-532

ATTORNEY GENERAL OF
PENNSYLVANIA, et al.,
    Respondents.

MEMORANDUM and ORDER

Mitchell, M.J.:

    Jay Jones Baird, an inmate at the State Correctional Institution – Coal Township has presented a petition for a writ of habeas corpus (ECF No.4). For the reasons set forth below, the petition will be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

    Jones is presently serving a life sentence as well as a concurrent five to twenty year sentence imposed following his conviction by a jury of criminal homicide, robbery and possession with intent to deliver a controlled substance. This sentence was imposed on September 24, 2009 in the Court of Common Pleas of Westmoreland County, Pennsylvania at CP-65-CR-942-2008.[1]

    An appeal was taken to the Superior Court in which the issues presented were:

    1. Did the trial court err in finding that the search of the [appellant's] person by Officer Raymond Dupilka was valid and legal?

    2. Was the verdict of guilty of robbery against the weight of the evidence.

(Appx.8). On December 14, 2010 the judgment of sentence was affirmed. (Appx. 2-17). Leave to appeal was denied on December 6, 2011. (Appx. 153).

---

[1] See: Petition at ¶¶ 1-6.

On January 4, 2013, Baird filed a post-conviction petition.[2] Relief was denied on December 15, 2014. (Appx. 157). A timely appeal was filed in the Superior Court in which the issues presented as summarized by the latter Court were:

1. Appellant fully litigated the voluntariness of his statements and confession by filing a suppression motion prior to trial. The denial of this motion, insofar as it related to Appellant's statements and confession, was not raised on appeal. Thus, the claim is waived under the PCRA…
2. Appellant asserts a conspiracy existed between the trial court, the Latrobe Police Department, and the district attorney's office to permit the introduction of an "altered document" and forgery at trial. This allegation concerns the admission of only a portion of the waiver rights form Detective Burkey presented to Appellant prior to the voice stress examination…
3. Present counsel also notes that in his amended petition Appellant raised allegations of PCRA counsel's ineffectiveness in failing to ascertain and argue the above issues. (Appx.137-139).

In his petition here, Baird seeks to raise the following issues:

1. The search of the defendant on Jan. 23, 2008 violated his rights against warrantless search and seizure. Office Ray Dupilka obtained a search warrant for appellant's apartment, the officers conducted a pat down for officers' safety, appellant was not under arrest at that time. The officer was squeezing, manipulating the small objects in appellant's pockets knowing the items were clearly not any weapons, but to try to determine if it was drugs, etc.
2. Verdict of guilt[y] of robbery was against the weight of the evidence. Appellant was convicted of robbery which includes inflict[ing] bodily injury while committing theft. The Commonwealth never proved that the design or purpose of the murder was to obtain money or drugs from the victim. The jury concluded the homicide occurred during the commission of theft, although no direct evidence established that theory.
3. Admission of a redacted waiver of rights constitu[tes] error and failure to object constituted ineffective assistance of trial counsel. The jury needed to take into consideration the totality of circumstances in order to find appellant's confession voluntarily made, in order to accept it as evidence against appellant. Yet, the redacted part eliminates substantial information needed about a voice stress test that led to the confession. The jury never knew of the "totality of circumstances" needed to make an informed decision. Failure of trial attorney to object constitutes ineffective assistance of counsel.
4. Police failed to re-issue **Miranda** warnings following defendant's response to failing voice stress test. Appellant was given a voice stress test. Upon completion of the testing Officer reviewed the results, and upon being told appellant failed the questions related to killing the victim, appellant stated "I'm fucked" and the test officer and arresting officer ask[ed] for appellant to "make them understand" leading to his

---

[2] Id.at ¶11.

confession without re-issuing **Miranda** warnings. As the voice test **Miranda** only covered the test itself.[3]

The background to this prosecution is set forth in the Superior Court's December 14, 2010 Memorandum citing the post-conviction court's factual recitation:

> The charges in this case arise from an incident alleged to have occurred on or about January 20, 2008 in the City of Latrobe, Westmoreland County. On January 21, 2008 at approximately 10:31 p.m. Officer Ray Dupilka of the Latrobe Police Department was dispatched to 513 Ligonier Street in Latrobe for a report of an unresponsive male. Upon his arrival at the second floor apartment, he observed the body of Bradley Holnaider lying on the floor in the living room of the residence. He also encountered the Defendant, Jay Baird, inside the apartment, which was his residence. (HT 11-14).
>
> The Defendant told Officer Dupilka that Holnaider had been staying with him in the apartment for a while, and that he had returned home to find the decedent unresponsive in the living room. He further opined that Holnaider had suffered a drug overdose. (HT 14). The Defendant consented to a search of the apartment and the apartment was then searched and processed by Westmoreland County Detective Hugh Shearer. The Defendant was interviewed inside the apartment by Officer Dupilka and Westmoreland County Detective Anthony Marocci at approximately 3:00 a.m. on January 22, 2008. The Defendant related that … Bradley Holnaider came to stay at the apartment on January 20, 2008 and that he believed Holnaider was inside the apartment on January 21, 2008 when the Defendant left to go to work. The Defendant told the officers that he spent some time with friends after work, and returned to the apartment at approximately 10:30 p.m., when he found Holnaider's body. (HT 16-18). The Defendant was also interviewed by Westmoreland County Detectives Richard Kranity and Robert Weaver at his place of employment on the following day. (HT 18).
>
> Officers obtained a search warrant for the Defendant's apartment on January 23, 2008, and executed the search warrant on that same day. (HT 18-19). Upon arriving at the apartment, officers first knocked loudly on the door of the apartment and announced their presence at least six times. There was no response from inside the apartment. There also was no response from the Defendant when officers attempted to contact him by telephone. (HT 20). It was then that the officers decided to remove the front door of the apartment by removing the hinge pins from the door. (HT 21). After the officers had removed the pins and were about to remove the door, the front door was opened by the Defendant from the inside, causing it to collapse onto the officers. (HT 22-23, 70, 79). It was as if the Defendant had pushed the door into the officers. (HT 79). Officer Dupilka testified that he was startled by the Defendant's actions, and immediately asked

---

[3] See: Petition at ¶12.

3

him to come out into the hallway, where he conducted a pat-down search of the Defendant for the officer['s] safety

Officer Dupilka knew that the Defendant had engaged in illegal drug use in the past. (HT 27). Therefore, rather than running his hands up and down the Defendant's pants, he used a "squeezing motion" when conducting the pat-down so as to lessen the likelihood of sustaining a needle-stick injury. (HT 24-25, 71). During the pat-down of the Defendant, Officer Dupilka felt several tablets inside plastic in the left front pocket of the Defendant's pants. He immediately recognized this as suspected contraband, based upon his training and experience in narcotics investigations. (HT 24-26, 72). Upon retrieving this object from the Defendant's pocket, the Defendant advised Officer Dupilka that the items were five (5) suboxone tablets packaged in a plastic bag.

The Court continued:

> During the ensuing execution of the search warrant, the officers observed, in plain view on a night stand in appellant's bedroom, a marijuana smoking pipe. Also seized from the trash can in appellant's kitchen, at appellant's direction, were empty packets of heroin… When the search was completed, appellant was taken back to the police station and was asked if he would participate in an interview. Appellant agreed and was taken to an interview room and read his **Miranda** rights and also executed a waiver of rights form. Appellant was then questioned as to how he came into possession of the Suboxone pills. After a period of questioning, one of the detectives, Detective Kranitz, stated he did not believe appellant and left the interview room. Appellant questioned the remaining officer, Raymond Dupilka, as to why the police did not believe him. After being confronted with certain inconsistencies between his statement and the facts, appellant was asked if he would submit to a voice stress analysis examination. Appellant agreed and the officer that conducted those tests, Detective Paul Burkey, was summoned.
>
> Detective Burkey arrived and, after he was apprised on the investigation, crafted several questions to pose to appellant. Detective Burkey then met with appellant, explained the voice stress analysis test process, and showed him the questions that he would be asking. Appellant was also provided a waiver of rights form once again and a written explanation of the test. The test was then conducted and the results of the test, as depicted on his computer screen, were shown to appellant. Without revealing the questions involved, Detective Burkey showed appellant a result that indicated low stress and contrasted that result with one showing high stress. Detective Burkey explained to appellant that a low stress response would be consistent with a truthful answer whereas a response that showed high stress would raise suspicions of an answer involving deception. Detective Burkey than read the questions he had asked appellant and showed the corresponding test result. When Detective Burkey reached question six, which asked if appellant had killed "Brad," appellant stated, while looking at the computer screen, "I'm

fucked." Detective Burkey asked appellant what he meant by that comment, to which appellant replied "I did it." Detective Burkey then summoned Officer Dupilka, who had experience in voice stress analysis testing, to come into the room. When he looked at the results, Officer Dupilka began shaking his head back and forth horizontally in a negative fashion. Seeing this, appellant, while tearing up, again stated "I'm fucked." Officer then asked appellant to tell him what happened in the apartment.

Appellant told Officer Dupilka that he and Holnaider got into a fight on January 20, 2008 over the money that appellant owed Holnaider for drugs. As the two men struggled, appellant was able to wrap an electrical cord around Holnaider's neck and choked him to a point where Holnaider expired. Officer Dupilka then told appellant that he did not believe appellant had the physical stature to accomplish what he contended, particularly as Mr. Holnaider was known to have a martial arts background. Confronted with this, appellant reiterated his version of events. Detective Kranitz then stated that appellant's version of events was inconsistent with how Holnaider's body was found. Appellant then put his head in his hands, wiped his brow, and admitted to strangling Holnaider as he slept in the living room chair. (Appx. 3-7)(footnotes omitted).

Testimony was presented by the prosecution that the cause of the Holnaider's death was asphyxiation due to strangulation. (Appx. 804).

Because it appears that the issues which Baird seeks to raise here have been raised in the state courts in the first instance, they are properly before this Court. (28 U.S.C. § 2254 (b)(1)(A).[4] The Commonwealth concedes that the petition is timely (28 U.S.C. §2244(d)(1)).[5]

Petitioner's first allegation is that he was unlawfully subjected to a search and seizure incident to his arrest. As the post-conviction and Superior Courts observed, the officer "knew that the Defendant had engaged in illegal drug use… therefore, rather than running his hand up and down the Defendant's pants, he used a "squeeze motion" when conducting the pat-down… [and] felt several tablets inside plastic in the left front pocket of the Defendant's pants." Petitioner now contends that the purpose of the search was not to locate possible weapons but rather to seek illegal drugs from his person.[6] On December 15, 2008, the trial court held a suppression hearing (Appx. 218-314) and denied the motion on March 30, 2009. (Appx. 1295-1313). Specifically, the court wrote:

---

[4] The Commonwealth appears to concede that the petitioner's first two issues where exhausted in the state courts but contends that his third and fourth issues where not presented to those courts. (Ans. at p.6).
[5] See: Answer at p.3.
[6] At the time of the Terry v. Ohio, 392 U.S. 1 (1968) frisk, the police possessed a search warrant for petitioner's apartment but not for his person.

5

> This court found the testimony of Officer Dupilka to be credible. The evidence supports a finding that the actions of the Defendant under the totality of the circumstances provided sufficient reasonable suspicion in Officer Dupilka's mind to believe that the Defendant could be armed and pose a danger to officers at that time, so to justify a *Terry* search for weapons. Indeed, the Defendant does not appear to suggest otherwise…
>
> Officer Dupilka testified that he was aware on January 23, 2008, that the Defendant had been involved in illegal drug use in the past. For this reason, rather than running his hands up and down the Defendant's pants, he used a "squeezing motion" when conducting the pat-down of the Defendant's pants so as to lessen the likelihood of sustaining a needle-stick injury. During the pat-down of the Defendant's pocket area, Officer Dupilka felt several tablets inside plastic in the left front pocket of the Defendant's pants…He immediately recognized this as suspected contraband, based upon his extensive training and experience in narcotics investigations…
>
> Officer Dupilka testified that when he felt the plastic substance containing tablets in the Defendant's pockets, he immediately recognized this item as contraband. He recognized the item as contraband without the need for further investigation, manipulation or squeezing. His experience and training in narcotics investigations provided him with the knowledge that the tablets contained in a plastic substance were likely illegal substances. For these reasons, Officer Dupilka's actions did not exceed the scope of a *Terry* frisk, and the Soboxone tablets recovered from the Defendant's pants pocket during the *Terry* search were not obtained unconstitutionally and are admissible pursuant to the "plain feel doctrine." (record references and citations omitted). (Appx.1302-1305).

In Stone v. Powell, 428 U.S. 465, 482 (1976) the Court held that

> [W]here the State has provided for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

To overcome this bar, a petitioner must demonstrate that a structural defect in state procedure barred him from fully raising his claim. Marshall v. Hendricks 307 F.3d 36, 81 (3d Cir. 2002) cert. denied 536 U.S. 911 (2003). The record in the present case clearly demonstrates that a full and thorough hearing on petitioner's Fourth Amendment claim was conducted, and a reasoned decision rendered. Thus, the petitioner cannot overcome the Stone v. Powell bar.

6

Petitioner's next argument is that the evidence was insufficient to sustain his robbery conviction. When raised in the context of a habeas corpus petition, the question is whether any fact finder could have determined guilt beyond a reasonable doubt. Coleman v. Johnson, 132 S.Ct. 2060, 2064 (2012).

Baird was charged with robbery in violation of 18 Pa.C.S.A. §3701(a)(1)(i) which provides:

> A person is guilty of robbery if, in the course of committing a theft he inflicts serious bodily injury upon another.

In instructing the jury the trial court stated:

> At case no. 942 of 2008 at Count 2 the defendant has been charged with robbery. To find the defendant guilty of this offense, you must find that the following two elements have been proven beyond a reasonable doubt.
>
> First, that the defendant inflicted serious bodily injury on the victim Bradley Holnaider.
>
> And second, that the defendant did this during the course of committing a theft.
>
> During the course of committing a theft means that you can find the defendant guilty if you find beyond a reasonable doubt that he did these things either while actually committing a theft, attempting to commit a theft, or while fleeing after committing or attempting to commit a theft. A theft, of course, means taking unlawful control of someone else's properly not intending to give it back.
>
> Serious bodily injury is defined in law as a bodily injury that creates a serious risk of death or causes serious permanent disfigurement, or protracted loss or impairment of any bodily member or organ. This means an injury that causes a substantial risk that the victim will die or an injury that permanently and seriously disfigures the victim, or that causes a long-term loss or limitation on the use of any part of the body. [Those are] the elements of robbery at Count 2. (Appx. 1133-1134).

In reviewing this contention, the Superior Court wrote:

> > [Prior to the incident] appellant was observed without any money and exhibited a fairly desperate disposition for obtaining drugs. The victim was seen with several hundred dollars just prior to his death. Appellant was then observed not only with ample cash, but in possession of Suboxone, a drug he was not known to have, which coincidentally, the victim had in his possession upon his arrival at appellant's apartment. The inference that appellant stole the drugs and

money from Holnaider is extremely compelling. Whether or not theft was the design or purpose of Holnaider's murder may be less so.[5]

> fn 5. In this regard we point out an error in appellant's argument. It was necessary for the jury to conclude that the homicide occurred during the commission of the theft in order to convict for robbery. Had appellant murdered Holnaider while he slept for even the partial purpose of stealing his drugs and money, then a robbery would be established, as the murder would have been instrumental in effectuating the theft.

Nevertheless, the inference is not so contrary to the evidence or common sense as to shock one's sense of conscience… A logical explanation is the equivalent to saying that the verdict fit the evidence presented, even if there may have been other possibilities and one cannot be absolutely certain that the logical explanation is what actually occurred. Thus, a logical explanation would be sufficient to allow the conclusion that the verdict was not so contrary to the evidence as to shock one's sense of justice. (Appx. 16-17).

The definition of a crime is a matter of state law <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 n.16 (1979)(the sufficiency of the evidence "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law"). This directive was observed by the Superior Court in reviewing this issue and the Court concluded that as a matter of state law, the evidence was adequate for a reasonable jury to convict the petitioner of robbery. This conclusion is not only supported by the record but is binding here. <u>Swarthout v. Cooke</u>, 131 S.Ct. 859 (2011).

Petitioner argues in his third issue that his redacted confession was introduced to the jury, thereby leaving the jury unaware of the fact that his confession resulted from the earlier ensuing voice analysis testing. According to petitioner, this lack of information regarding the totality of the circumstances surrounding his confession prevented the jury from making a valid determination about the voluntary nature of his confession.

In reviewing this issue, the Superior Court wrote,

> Appellant fully litigated the voluntariness of his statements and confession by filing a suppression motion prior to trial. The denial of this motion, insofar as it related to Appellant's statements and confession, was not raised on appeal. Thus the claim is waived under the PCRA. (Appx. 137).

In addition to the reasons set forth in rejecting petitioner's first issue it, it would also appear that the petitioner failed to raise this issue in a timely manner in the Pennsylvania appellate courts, and it is waived here. 28 U.S.C. 2254(b)(1)(A). However, petitioner now seeks to raise this issue as one involving ineffective assistance of counsel.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

The issue of voluntariness was thoroughly pursued at the suppression hearing and counsel cannot be deemed to have been ineffective for not raising a meritless claim. Real v. Shannon, 600 F.3d 302, 310 (3d Cir. 2010).

At the post-conviction hearing conducted on October 30. 2014 (Appx. 1314-1334) no testimony was presented by the petitioner but rather he argued, pro se, that it was inappropriate to admit the trial testimony of Detective Burkey who related the petitioner's statements made after being informed that he had failed the voice stress test. Those statements had been redacted so as not to permit the jury to learn that they were secured following Baird's failing the stress test. Thereupon, the court explained that evidence of a stress test was not admissible at trial so the redaction was done to conform the evidence to Pennsylvania law. (Appx. 1318-1323). The petitioner conceded that he was relying on

9

the trial record in support of his post-conviction petition and had no evidence to present. (Appx. 1331).

As previously noted, where, as here, the court conducted a full suppression hearing, its determination is not subject to review by a federal habeas corpus court. Stone v. Powell, supra. Because petitioner failed to present any evidence in support of his claim of ineffective assistance of counsel, this issue is likewise meritless.

Petitioner's final issue was that his Miranda warnings should have been repeated at the time he was informed that he had failed the stress test and for this reason his confession should have been excluded. When the petitioner was transferred from his home to the police station following the recovery of controlled substances on his person and in his home, he was advised of his Miranda rights and consented to the voice stress test. Prior to the testing he was again advised of his rights and the test was conducted. Because of its suspicious results the petitioner was advised of his possible deceptive answers and proceeded to confess. In view of the close temporal proximity and having twice been informed of his rights, there is nothing to suggest that he was unaware of his rights, or that there was any need to secure another written waiver. Berghuis v. Thompkins, 560 U.S. 370, 388-389 (2010)(" a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police"). In addition, as discussed above, the voluntary nature of his statements was fully litigated.

Because there is nothing in the record to support Baird's contention that his conviction was secured in any manner contrary to the laws of the United States as determined by the Supreme Court, nor that it involved any unreasonable application of those decisions, he is not entitled to relief here.

For this reason, the petition of Jay Jones Baird for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

Filed: December 1, 2016                    s/ Robert C. Mitchell
                                           United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAY JONES BAIRD, JU-5771,  )
    Petitioner,  )
      )
    v.  ) 2:16-cv-532
      )
ATTORNEY GENERAL OF  )
PENNSYLVANIA, et al.,  )
    Respondents.  )

ORDER

AND NOW, this 1st day of December, 2016, for the reasons set forth in the foregoing Memorandum,

IT IS ORDERED that the petition of Jay Jones Baird for a writ of habeas corpus (ECF No.4) is DISMISSED, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is DENIED.

The parties are advised that if they desire to file an appeal a notice of appeal must be filed within thirty (30) days of today. F.R.App.P. 4(a)(1).

                                                s/ Robert C. Mitchell
                                               United States Magistrate Judge